Fionne X. TUCKER, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CO–719.

District of Columbia Court of Appeals.

Argued Sept. 11, 1997.

Decided May 4, 1998.

ger seat of an automobile in which Tucker was riding. On appeal, Tucker contends that the trial judge should have granted his pre-trial motion to suppress tangible evidence. He claims, *inter alia,* that the Motor Vehicle Tinted Window Amendment Act of 1994 (TWA), D.C.Code § 40–718.1 (Supp.1997), unconstitutionally discriminates on account of wealth. Because the pistol and ammunition were the fruits of the officers' stop of the vehicle for an alleged violation of the TWA, Tucker argues that their seizure was unlawful and that the evidence relating to them should have been suppressed. We affirm.[2]

Jennifer P. Lyman, Washington, DC, with whom Gladys Xiques, Law Student No. 7679, was on the brief, for appellant.

Ronald Machen, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Margaret Carroll, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and PRYOR, Senior Judge.

SCHWELB, Associate Judge:

 Fionne X. Tucker was convicted at a bench trial of several weapons offenses[1] after officers of the United States Park Police recovered ammunition from Tucker's person and a loaded pistol under the passen-

## I.

The TWA makes it unlawful to operate or park a motor vehicle on a public street or space in the District if the vehicle has "[a] front windshield or front side windows that allow less than 70% light transmittance," or "[a] rear windshield or rear side windows that allow less than 50% light transmittance." D.C.Code § 40–718.1(a). The statute contains the following exemptions:

(h) Limousines, ambulances, buses and hearses, meeting the requirements of 18 DCMR 413.10, church-owned vehicles, and all official government vehicles, shall be exempt from the requirements of this section.

(i) Nothing in this chapter shall be construed to modify or affect any federal law concerning the window tinting of motor vehicles that is applicable to manufacturers, importers, dealers, or motor vehicle

---

1. *See* D.C.Code §§ 22–3204(a) (1996) (carrying a pistol without a license); 6–2311(a) (1995) (possession of an unregistered firearm); 6–2361(3) (possession of ammunition for an unregistered firearm).

2. Tucker did not raise in his motion to suppress evidence his contention that the TWA discriminates on the basis of wealth, although he did make the point briefly during the oral argument of the motion. Arguably, Tucker did not adequately preserve the issue and, if that is so, then our review of the constitutionality of the statute is entirely discretionary. *See In re S.K.,* 564 A.2d 1382, 1384 n. 2 (D.C.1989) (per curiam) (citations omitted). Moreover, we generally decline to rule on constitutional questions if a case can

be satisfactorily resolved on other grounds, *see, e.g., Olevsky v. District of Columbia,* 548 A.2d 78, 81 (D.C.1988), and it may well be that nonconstitutional grounds for affirmance are present here. *See Illinois v. Krull,* 480 U.S. 340, 349–55 & n. 12, 107 S.Ct. 1160, 1166–70 & n. 12, 94 L.Ed.2d 364 (1987), discussed in note 10, *infra.* Nevertheless, we have elected to consider on its merits Tucker's challenge to the validity of the TWA. We apprehend that alternative grounds for disposition would probably be available in any case arising out of a traffic stop based on a violation of the TWA, so that, unless we decide the constitutional question in a case such as this one, that question may continue to go unresolved.

repair businesses for new or used motor vehicles and equipment.[3]

Tucker asserts that the "classification exempting expensive cars from tint prohibitions" constitutes an irrational "disparity based on wealth," in violation of equal protection[4] and due process principles.

To sustain his claim of unconstitutionality, Tucker must carry a heavy burden. "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a reasonable doubt." *Hornstein v. Barry,* 560 A.2d 530, 533 n. 5 (D.C.1989) (en banc) (citation omitted). If the repugnancy between the law and the Constitution is not manifest, a court "usurps legislative functions where it presumes to judge a law void." *Id.* at 533 (citation omitted).

▮ Where a statutory classification is alleged to contravene equal protection principles, and where, as here, the statute does not implicate a fundamental right or a suspect class,[5] we must assess its validity pursuant to a "rational basis" standard. *Sandoe v. Lefta Assocs.,* 559 A.2d 732, 736 (D.C.1988). Under that standard, a statute is constitu-

tionally valid so long as the challenged classification is rationally related to a legitimate governmental purpose. *Western & Southern Life Ins. Co. v. State Bd. of Equalization of Cal.,* 451 U.S. 648, 657, 101 S.Ct. 2070, 2077, 68 L.Ed.2d 514 (1981). A statutory classification "will not be set aside if any set of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). The party challenging the constitutionality of such a classification must make "'a clear showing of arbitrariness and irrationality,'" *Kadrmas v. Dickinson Pub. Schs.,* 487 U.S. 450, 462, 108 S.Ct. 2481, 2490, 101 L.Ed.2d 399 (1988) (quoting *Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981)), and must "negat[e] every conceivable basis which might support it." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973)).

▮ Where the validity of a statute is considered under the rational basis standard, the government is not obliged to place in the

---

**3.** Sergeant Rodney Soulsby of the Metropolitan Police Department (MPD), who has trained MPD officers in the enforcement of the TWA, was called as a witness by the defense. Sergeant Soulsby testified that the statute exempts "multi-purpose vehicles," such as "the Nissan Pathfinder, mini-vans, Chevy Suburban," and any vehicle that has a "darker tint of glass" approved by the National Highway Traffic Safety Administration (NHTSA). Although his testimony on the point was not altogether clear, it appears that Soulsby's assertion that multi-purpose vehicles are exempt was predicated on his understanding of Section 40–718.1(i).

**4.** Unlike the Fourteenth Amendment, which is applicable to the States, the Fifth Amendment, which applies, *inter alia,* to the District of Columbia, contains no Equal Protection Clause. The Supreme Court has held, however, that the Fifth Amendment's Due Process Clause embraces equal protection principles. *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

**5.** Although Tucker appears to be alleging discrimination based on economic status, that claim does not affect the applicability of the "rational basis" standard. *See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 19, 93 S.Ct.

1278, 1289, 36 L.Ed.2d 16 (1973) (rejecting as "simplistic" the proposition that if, under a statutory scheme, some poorer people receive less favorable treatment than other more affluent people, the statute impermissibly discriminates on the basis of wealth); *see also James v. Valtierra,* 402 U.S. 137, 142, 91 S.Ct. 1331, 1334, 28 L.Ed.2d 678 (1971).

Discrimination based on economic status is subject to constitutional challenge, if at all, where it denies impoverished citizens important rights. *See, e.g., Griffin v. Illinois,* 351 U.S. 12, 18–20, 76 S.Ct. 585, 590–91, 100 L.Ed. 891 (1956) (denial of trial transcript without cost to indigent defendant seeking to appeal from his conviction violates Fourteenth Amendment). The TWA can hardly be described as discriminating against "poor people," for even a citizen who owns a fleet of Rolls Royces, Jaguars and Lincoln Continentals is subject to the proscriptions of the statute with respect to each of these vehicles. Tucker has cited no authority, and we know of none, extending constitutional protection based on poverty or economic condition to a class such as one consisting primarily of owners of automobiles, many of whom are doubtless very rich indeed. In any event, Tucker makes no claim that we should assess the constitutionality of the TWA under a standard more rigorous than the "rational basis" test.

legislative record any evidence supporting a challenged classification. *Steffan v. Perry,* 309 U.S.App. D.C. 281, 294, 41 F.3d 677, 690 (1994) (en banc). "[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Communications, Inc., supra,* 508 U.S. at 315, 113 S.Ct. at 2102 (citation omitted). The absence of "on the record" legislative facts "has no significance in rational-basis analysis." *Id.* (citations omitted). A legislative choice is "not subject to courtroom factfinding." *Id.* Indeed, the legislature may properly act on the basis of "rational speculation unsupported by evidence or empirical data." *Id.* (citations omitted). "Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." *Id.* (quoting *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 510, 57 S.Ct. 868, 872–73, 81 L.Ed. 1245 (1937)).

Finally, the Supreme Court has held that state and local governments may implement their regulatory programs "step by step" and may enact legislation that "only partially ameliorate[s] a perceived evil and defer[s] complete elimination of the evil to future regulations." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam) (citing *Williamson v. Lee Optical,* 348 U.S. 483, 488–89, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955)). "A classification does not fail rational-basis review because 'it is not made with mathematical nicety or because in practice it results in some inequality.'" *Heller v. Doe,* 509 U.S. 312, 321, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993) (quoting *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970)). "Defining the class of persons subject to a regulatory requirement ... inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some

points is a matter for legislative, rather than judicial, consideration." *Beach Communications, Inc., supra,* 508 U.S. at 315–16, 113 S.Ct. at 2102 (alteration in original) (citation and internal quotation marks omitted). "In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Dukes, supra,* 427 U.S. at 303, 96 S.Ct. at 2517.

## II.

The TWA was enacted on August 26, 1994 in order to protect public safety. COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC WORKS AND THE ENVIRONMENT, REPORT ON BILL NO. 10–422, THE "MOTOR VEHICLE TINTED WINDOW AMENDMENT ACT OF 1994" (May 23, 1994) (hereinafter COMMITTEE REPORT). The legislation was deemed necessary because:

> According to the Metropolitan Police Department, deeply tinted windows on motor vehicles impair a driver's vision and contribute to accidents of all kinds. Deeply tinted windows also threaten police personnel when they approach vehicles after making traffic stops, because the officer is unable to see into the motor vehicles and detect any dangerous situations. Additionally, deeply tinted windows hinder the proper identification of suspects who commit crimes and flee behind the safety of motor vehicles with deeply tinted windows.

COMMITTEE REPORT, at 1.

■ Tucker does not claim that the TWA fails to serve a legitimate government interest. Instead, he asserts that there is no rational basis for excluding from the proscriptions of the Act limousines and vehicles which are in compliance with relevant federal laws.

The legislative history of the statute does not disclose the Council's rationale for excluding limousines from coverage,[6] but sensible reasons for such an exemption are readily apparent. In the nation's capital, limousines

---

6. As we have noted previously, no such legislative disclosure is required. *See Beach Communi-* *cations, Inc., supra,* 508 U.S. at 315–16, 113 S.Ct. at 2102–03.

are often used to carry diplomats and governmental officials. The legislature might reasonably believe that the tinting of the windows in these vehicles would in some measure enhance the security of their occupants. Moreover, it is common knowledge that limousines are often operated by professionally licensed drivers, and one could rationally conclude that the risk of misuse of these vehicles for criminal activity is minimal.[7] *Cf. People v. Hagen,* 191 Ill.App.3d 265, 138 Ill.Dec. 410, 412, 547 N.E.2d 577, 579 (1989) (tinted window statute exempting cars manufactured before 1982 did not deny owner of newer vehicle the equal protection of the laws, for the legislature could reasonably conclude that cars manufactured after 1981 "posed more of a threat" than those manufactured previously).[8]

The TWA also states that its provisions should not be construed to modify any federal law concerning window tinting of motor vehicles. D.C.Code § 40–718.1(i). As we understand the uncontradicted testimony of Sergeant Soulsby, this exemption applies to vehicles that satisfy the NHTSA's tinting standards. Such a provision is plainly rational, for it avoids any potential interference with interstate commerce that might arise if the District indirectly imposed more restrictive requirements on the automobile industry than the federal government does.[9] In *People v. Strawn,* 210 Ill.App.3d 783, 155 Ill.Dec. 269, 569 N.E.2d 269 (1991), the court sustained against an equal protection challenge a provision of Illinois' tinted window statute which exempted out-of-state vehicles from coverage. The court stated:

> Here, the State's legitimate objective, to protect the police and the public, is well established. It is apparent that any law

which would prohibit vehicles registered in other jurisdictions from having tinted windows may run afoul of the interstate-commerce provisions of the Constitution. Accordingly, the legislature has chosen to avoid that possibility by limiting the law's application to Illinois vehicles. This decision is a reasonable one. The equal-protection provision invalidates only those enactments that are arbitrary, unreasonable, and unrelated to the public purpose sought to be attained. We find no such difficulties with the current provision.

*Id.* 155 Ill.Dec. at 275, 569 N.E.2d at 275 (citation omitted). *See also People v. Pitts,* 222 Mich.App. 260, 564 N.W.2d 93, 100–01 (1997) ("[n]or is allowing tinted windows on ... out-of-state cars a violation of defendant's equal protection rights.... [This] exception[ ] is rationally related to [the] legitimate government purpose[ ] [of] ... promoting interstate commerce."). Although the District's statute does not exempt out-of-state vehicles generally from its application, the exception for cars meeting federal tinting standards enjoys similar justification.

Here, as in *People v. Hagen,* 191 Ill.App.3d 265, 138 Ill.Dec. 410, 547 N.E.2d 577 (1989), "the ... legislature decided to ameliorate tinted windows a step at a time by attacking what it saw as the most immediate threat...." *Id.* 138 Ill.Dec. at 413, 547 N.E.2d at 580. The members of the Council obviously did not believe that limousines or vehicles which are in compliance with federal standards constitute such a threat. "Whether this decision by the legislature is wise or the best course chosen is not a proper subject of judicial inquiry." *Id.* Accordingly, we sustain the validity of the TWA.[10]

---

7. During oral argument of the motion, the judge asked Tucker's attorney if he had ever heard of a limousine being used in a drive-by shooting. After making a facetious reference to Prohibition violence in the 1920's, counsel acknowledged that "I've never heard of it."

8. Tinted window statutes in other jurisdictions contain comparable provisions exempting limousines. *See, e.g.,* N.C. Gen.Stat. § 20–127(c)(7) (1996); Miss.Code Ann. § 63–7–59(2) (1997); Me. Rev.Stat. Ann. tit. 29–A, § 1916(2)(B)(3) (West 1996).

9. The District is not alone in providing such an exemption. *See, e.g.,* 75 Pa. Consolid. Stat. § 4524(e)(2)(ii) (1997); Utah Code Ann. § 41–6–149(7) (1996); Tenn.Code Ann. § 55–9–107(a)(6) (1996); Idaho Code § 49–944(5) (1996); Ky.Rev. Stat.Ann. § 189.110(12) (1997).

10. The government argues that, even if the TWA were unconstitutional—a proposition which the government vigorously disputes—the motion to suppress was properly denied. The government relies on *Illinois v. Krull, supra* note 2, in which the Supreme Court held that the exclusionary rule does not apply to evidence obtained by police officers who acted in objectively reasonable

## III.

For the foregoing reasons, the judgment appealed from is hereby

*Affirmed.*[11]

reliance upon a statute, even if that statute is subsequently held to be unconstitutional. *Krull,* 480 U.S. at 349–55, 107 S.Ct. at 1166–70. Because we have concluded that the TWA is a constitutionally valid enactment, we need not decide whether this case is controlled by *Krull.*

11. Tucker also contends that the officers' seizure of the pistol and the ammunition after the vehicle had been stopped was in violation of the Fourth Amendment. Following the stop, however, the officers smelled marijuana in the car, and the driver told them that "we," apparently meaning he and Tucker, had smoked all of the marijuana. The officers therefore had probable cause to believe that both men had engaged in criminal conduct, *i.e.,* the unlawful possession of marijuana in the officers' presence, *see* D.C.Code § 23–581(a)(1)(B) (1996); *Minnick v. United States,* 607 A.2d 519, 524–25 & n. 11 (D.C.1992), and they thus had the right to search the vehicle and its occupants. *See, e.g., New York v. Belton,* 453 U.S. 454, 462–63, 101 S.Ct. 2860, 2865–66, 69 L.Ed.2d 768 (1981); *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564–65, 65 L.Ed.2d 633 (1980). Moreover, Tucker's standing, as a passenger, to complain of the search of the car is dubious to say the least, *see Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and any claim of pretextuality is undermined by *Whren v. United States,* 517 U.S. 806, 812–818, 116 S.Ct. 1769, 1774–77, 135 L.Ed.2d 89 (1996). Indeed, Tucker's attorney acknowledged during his argument in the trial court that although he was presenting other contentions for the record, "all I can challenge really is the stop." Under these circumstances, the motion to suppress the contraband recovered from the vehicle and from Tucker's person was properly denied.