*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-AA-49

FRANCINE FRAZIER, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

DISTRICT OF COLUMBIA
DEPARTMENT OF PUBLIC SCHOOLS, INTERVENOR.

On Petition for Review of an Order
of the Compensation Review Board
(CRB-108-17)

(Argued April 30, 2019        Decided June 11, 2020)

*David J. Kapson*, with whom *Kevin H. Stillman* was on the brief, for petitioner.

*Tonya A. Robinson* filed a statement in lieu of brief for respondent.

*Lucy E. Pittman*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Caroline S. Van Zile*, Deputy Solicitor General, were on the brief, for intervenor.

Before FISHER, THOMPSON, and MCLEESE, *Associate Judges*.

Opinion for the court by *Associate Judge* THOMPSON.

Dissenting opinion by *Associate Judge* MCLEESE at page 27.

THOMPSON, *Associate Judge*:    In December 2008, petitioner Francine Frazier, who was then employed by intervenor District of Columbia Public Schools, sustained on-the-job injuries to her right hip, knee, and foot when she fell while walking up a flight of stairs.  She submitted a claim under the public sector workers compensation program ("PSWCP" or the "Program") and thereafter received temporary total disability ("TTD") benefits for several months.  She returned to work full-time in December 2009 (and though she had received TTD benefits through April 2010, the December 2009 to April 2010 payments were deemed to have been made in error).

Over five years later, petitioner submitted a claim for a schedule award based on permanent disability related to the December 2008 injury.[1]  The Office of

---

[1] *See* 7 DCMR §§ 140.1(a) and 140.2(b) (2017) (providing generally that a claim for permanent disability compensation shall be filed "[a]t any time after the claimant has been determined to have reached [maximum medical improvement] and to have a permanent impairment involving the loss of use of a member or function of the body . . . .").  Petitioner's brief states that she asked the PSWCP to make a permanent disability determination in March 2015, while the OAH and CRB rulings state that the PPD claim was submitted in 2014.  We note, however, that the record indicates that in 2011, petitioner's then-attorney sent the Program a February 22, 2011, medical report from an orthopedic surgeon who opined that petitioner had a "20% right lower extremity impairment."  The record and the briefs contain no explanation of what became of this 2011 initiative by petitioner's counsel or, in particular, whether it was treated as a claim.  We conclude that we

(continued…)

Risk Management ("ORM"), which "has oversight and administrative responsibility for the Program," 7 DCMR § 101.1, denied petitioner's claim on May 2, 2017, relying on two Additional Medical Evaluation reports from orthopedic surgeons who examined petitioner on December 4, 2015, and April 4, 2017, reviewed her medical records, and determined that she had 0% residual impairment from her 2008 accident. After ORM denied the claim, petitioner sought review in the Office of Administrative Hearings ("OAH"), even though ORM's Notice of Determination advised that any appeal should be made to ORM's Chief Risk Officer ("CRO"). In an October 2, 2017, order, OAH reasoned that only the CRO had authority to review the adverse determination in petitioner's case, and on that basis dismissed petitioner's appeal for lack of subject matter jurisdiction. Petitioner thereafter sought review by the Compensation Review

---

(…continued)

need not address the matter further because it does not appear that any of the authorities discussed herein would permit a different resolution of this matter if petitioner were deemed to have filed her request for a schedule award in 2011. We note that ORM did not deny petitioner's claim for a PPD schedule award as untimely, but denied it on the merits. *See also* 64 D.C. Reg. 6325, 6333 (July 7, 2017) (ORM statement in rulemaking notice that a claimant may make a claim for a schedule award "at any time"); 7 DCMR § 140.2(a) (providing generally that a claim for permanent disability compensation by a claimant who has reached maximum medical improvement must be filed within 180 days after the termination of temporary wage-loss benefits, but providing an exception to the 180-day limit where "there is good cause found by the Program to excuse the delay").

Board (the "CRB"). The instant petition for review followed after the CRB affirmed the OAH dismissal. We affirm the CRB's ruling. As we explain below, we do so because the statutory and regulatory scheme makes OAH review unavailable for the type of claim involved here, and because we are unpersuaded by petitioner's arguments that this limitation is unlawful, was unfairly retroactive in her case, and denied her due process and equal protection.

## I.

OAH acknowledged in its "Compensation Order Dismissing the Case for Lack of Jurisdiction" that it "is the administrative forum with primary jurisdiction over [PSWCP] compensation disputes." OAH noted, however, that its jurisdiction is limited. OAH went on to identify several statutory and regulatory provisions that it concluded required it to dismiss petitioner's case.

First, OAH addressed the assertion petitioner made in submitting her claim for a PPD schedule award: that she was requesting a "determination of whether [she] has a permanent partial disability pursuant to D.C. Code § 1-623.06a[.]" OAH acknowledged that under § 1-623.06a, it has jurisdiction to make permanent disability benefits determinations in the circumstance described in that provision.

*See* D.C. Code § 1-623.06a(a) (2016 Repl.). OAH correctly noted, however, that § 1-623.06a(a) pertains to permanent disability determinations sought within the last 52 weeks of temporary benefits by claimants who are approaching the end of the 500-week period during which temporary benefits are available. *Id.* OAH also cited its regulation at 1 DCMR § 2950.3(d), which similarly specifies that the cases that "OAH shall hear" include "[r]equests for determinations of whether a claimant has a permanent disability pursuant to D.C. Official Code § 1-623.06a"; as well as the ORM regulation at 7 DCMR § 155.2 (2017), which went into effect as a final regulation a few months before the OAH ruling and which states that "[r]equests for determination of whether claimant has a permanent disability pursuant to Section 2306a [of the Comprehensive Merit Personnel Act of 1978 ("CMPA"), i.e., D.C. Code § 1-623.06a(a)] shall be made to the Office of Administrative Hearings (OAH)." OAH concluded that the foregoing authorities did not empower it to make a permanent disability determination in petitioner's case because she was not currently receiving temporary disability benefits.

OAH also found that petitioner's claim was not among the types of claims described in D.C. Code § 1-623.24(b) and in 7 DCMR § 155.1 (2017) and 1 DCMR § 2950.3 (2017) and as to which OAH has jurisdiction. Section 155.1(a) states that "[i]nitial awards for or against compensation benefits pursuant to

Section 2324(b) of the Act" (i.e., D.C. Code § 1-623.24(b)) "shall be appealed to [OAH]" beginning December 1, 2016. 1 DCMR § 2950.3(a) states that OAH "shall hear" appeals from ORM pertaining to initial awards under § 1-623.24(b). Citing *Sheppard v. District of Columbia Dep't of Emp't Servs.*, 993 A.2d 525 (D.C. 2010) (per curiam), OAH cited this court's case law stating that the claims discussed in § 1-623.24 (and referenced in §§ 155.1(a) and § 2950.3(a)) are "initial claims for benefits . . . accompanied by a supervisor's report and not . . . subsequent claims arising from the same work-related injury[.]" *Sheppard*, 993 A.2d at 528 (deferring to this "longstanding" agency interpretation of the statute). OAH explained (and the CRB agreed) that in petitioner's case, § 1-623.24 governed her 2008 claim for TTD benefits, but not her instant claim for a permanent-disability schedule award.

OAH additionally reasoned that it did not have jurisdiction under the other subparagraphs of 1 DCMR § 2950.3, which authorize appeals to OAH from utilization-review decisions (*see* § 2950.3(b))[2] and decisions on appeals pertaining to "[m]odifications of awarded benefits pursuant to D.C. Official Code § 1-

---

[2] The District's brief notes that ORM has repealed the provision that was designated as 7 DCMR § 155.1(b) to recognize that the CMPA (specifically D.C. Code § 1-623.23(a-2)(4)) provides for appeals from utilization-review decisions to go to the Superior Court rather than to an ALJ. OAH has not amended § 2950.3(b) to make a corresponding change.

623.24(d)[,]" § 2950.3(c). Regarding § 2950.3(c) and § 1-623.24(d), we note that petitioner's claim for a permanent-disability schedule award is not a "modification[] of awarded benefits" because that statutory term refers to a reduction in or terminations of benefits "because of a change to the claimant's condition," D.C. Code § 1-623.24(d)(3)(A)–(D), or to an corrective compensation decision where there is "strong compelling evidence that the initial decision was in error," *id.* § 1-623.24(d)(3)(E). None of the foregoing provisions applies in petitioner's circumstance, which involves neither utilization review, nor a proposed reduction in awarded benefits, nor a claim that the initial benefit award to petitioner was in error.

Finally, OAH deferred to the ORM interpretation embodied in 7 DCMR § 156.1 (2017), which establishes that "[a] claimant who is dissatisfied with any other decision issued by the Program may only appeal the decision to the Chief Risk Officer."[3] *See also* 7 DCMR § 140.6(c)(2) (2017) (providing that a claimant whose request for a schedule award is denied shall be advised or her right to appeal the Program's decision to the CRO).

---

[3] 7 DCMR § 156.3 provides that the CRO "shall affirm the Program's decision[,] if it is supported by substantial evidence in the record." 7 DCMR § 156.5 provides for an appeal thereafter to the Superior Court pursuant to Superior Court Rule of Civil Procedure Agency Review Rule 1 (calling for review on the agency record).

The CRB affirmed the dismissal for lack of jurisdiction for the reasons cited by OAH. It also acknowledged, but did not resolve, petitioner's due process and equal protection challenges to 7 DCMR § 156.1, which petitioner agreed could not be considered by the CRB but raised in order to preserve her constitutional arguments for presentation to this court. In addition, the CRB considered petitioner's argument that OAH erred in applying 7 DCMR § 156.1 to her request for a hearing. The substance of § 156.1 was adopted as an emergency regulation (7 DCMR § 3356.1) after petitioner filed her request for a permanent disability determination, *see* 64 D.C. Reg. 4077, 4104 (Apr. 28, 2017) and 63 D.C. Reg. 15510, 15538 (Dec. 16, 2016), and § 156.1 had been adopted as a final regulation by the time OAH issued its ruling. Petitioner cited what she called the "unfair retroactive application" of the regulation. The CRB rejected that argument on the ground that "[t]he determining date for application of [the regulations] is the date [May 2, 2017,] of the [ORM] decision being appealed, not the date [c]laimant first requested a determination from ORM." Petitioner also cited the unfairness of allowing claimants dissatisfied with a decision on modification of benefits to request an OAH hearing, while petitioner's request for review of ORM's denial of her request for a "modification" to her benefit status could be presented only to the CRO, who petitioner implies would not be "a neutral arbitrator" and who would

not "assess[] [petitioner's] permanent partial disability based on her credibility[.]"[4] The CRB was "sympathetic" to petitioner's argument but concluded that the OAH ruling was in accordance with the law.

## II.

As noted above, petitioner commenced her claim for a PPD schedule award by asserting that she was relying on D.C. Code § 1-623.06a. For reasons the OAH discussed and as summarized above, that provision is not applicable to petitioner's claim. In her appeal to this court, petitioner does not renew her reliance on § 1-623.06a, and, with one exception, also does not claim that any other statutory or regulatory provision providing for a hearing before an administrative law judge ("ALJ") applies by its terms to her case.[5] Rather, petitioner presents statutory

---

[4] By contrast, § 1-623.24(b)(2) provides that OAH hearings on initial claims will be de novo hearings, i.e., and that OAH "may conduct the hearing in such manner as to best ascertain the rights of the claimant" and "shall receive such relevant evidence . . . as . . . . "necessary or useful in evaluating the claim." *See also* 7 DCMR § 158.1 ("All appeals of Program decisions before the OAH and OHA [i.e., the DOES Office of Hearing and Adjudication, now called the Administrative Hearings Division ("AHD"), *see Fernandes v. Ft. Myer Constr.*, 2007 D.C. Wrk. Comp. LEXIS 42 n.2 (Jan. 31, 2007)] shall be reviewed under a de novo standard of review.").

[5] The exception is that petitioner asserts that she properly requested a formal hearing under D.C. Code § 1-623.24(f) (providing for a hearing before a DOES

(continued…)

authority, constitutional, and estoppel claims. She asserts that ORM exceeded its authority in adopting 7 DCMR §§ 156.1 and that the regulation is inconsistent with the CMPA; that retroactive application of the regulation pursuant to 7 DCMR § 101.4[6] to deny her an evidentiary hearing deprives her of due process; that the regulation violates her equal protection rights; that ORM, which unreasonably delayed a determination on her request for a schedule award, should be estopped from applying the regulation so as to "unfairly deprive[] [her] of her day in court"; and that the CRB and OAH erred in determining otherwise. We address each of these arguments in turn. Because petitioner's claims present questions of law, our review is de novo. *See Family Fed'n for World Peace v. Moon*, 129 A.3d 234, 248 (D.C. 2015).

---

(…continued)

ALJ). We disagree. By its terms, § 1-623.24(f) applies to "[a] claimant who is not satisfied with a decision under subsection (d)," meaning a decision based on a determination that the claimant's disability has "ceased or lessened[,]" the "disabling condition is no longer causally related to the employment[,]" the "claimant's condition has changed from a total disability to a partial disability[,]" the "employee has been released to return to work[,]" or "the initial decision was in error." D.C. Code §§ 623.24(d)(1) and (4)(A)–(E). As this case involves petitioner's request for a schedule award, the foregoing provisions are inapplicable.

[6] 7 DCMR § 101.4 provides that the final regulations ORM promulgated in July 2017 "shall apply to all new, pending, and existing claims, whether the injury giving rise to such claim, occurred before or after the date of these rules." *See also* 64 D.C. Reg. 6325, 6327 (July 7, 2017) (ORM explanation that it "intend[ed] to apply the final rulemaking prospectively from its effective date, to include on-going appeals not yet reduced to a final order.").

### A. ORM's authority to adopt § 156.1

As this court recently stated in *Webb v. District of Columbia Dep't of Emp't Servs.*, 204 A.3d 843 (D.C. 2019), D.C. Code § 1-623.44 authorizes the Mayor to "promulgate rules necessary or useful for the administration" of the PSWCP, and the Mayor in turn has delegated that rulemaking authority, with "broad power," to ORM. *Id.* at 848. We see no reason to think that this broad power would exclude the authority to promulgate a regulation that, in ORM's words, affords "an administrative remedy that ensures swift, efficient and fair resolution of matters not statutorily committed to review by an ALJ," and that ORM believed would "streamline and expedite a claimant's appeal process." 64 D.C. Reg. at 6331.

Petitioner asserts, however, that § 156.1 is "inconsistent with the purposes of the Public Sector Workers' Compensation Act" (the "Act") and with how the legislature intended injured workers' rights to be resolved. We are not persuaded by this argument. For one thing, the Council of the District of Columbia specifically directed in one section of the Act, D.C. Code § 1-623.23(a-2)(4), that appeals from utilization-review decisions are reviewable by the Superior Court rather than by an ALJ. That is enough to show that the Council did not intend that

all PSWCP disputes would be subject to evidentiary hearings before an ALJ. For another thing, as ORM explained in adopting § 156.1, the Council "expressly provide[d] for a hearing before an ALJ"[7] only for some types of Program decisions, *see* D.C. Code §§ 1-623.06a(a), 1-623.24(b)(1) and 1-623.24(f), a scheme that does not support a conclusion that the Council had in mind specific requirements for how it "intended injured workers' rights to be resolved" in every Program context.

Petitioner also contends that 7 DCMR § 156 is facially invalid because the Act does not authorize ORM to make decisions regarding disability without review by DOES. Petitioner relies on D.C. Code § 1-623.02a, which provides in pertinent part that the Mayor may delegate "any of the powers conferred on him or her . . . except disability compensation hearings and adjudication powers, pursuant to § 1-623.28, which shall be exercised by the Director of [DOES]." We agree with the District of Columbia that the effect of § 1-623.02a (and of its reference to § 1-623.28) is to preclude the Mayor from delegating to ORM the responsibility that the Act specifically assigns to the Director of DOES (or his or her delegate): reviewing decisions made after evidentiary hearings on PSWCP initial claims for disability benefits. (The DOES Director has delegated that authority to the DOES

---

[7] 64 D.C. Reg. at 6331.

CRB.)[8] D.C. Code § 1-623.02a was no bar to ORM's adoption, pursuant to its delegation from the Mayor, of a rule (§ 156.1) that directs other types of appeals to the CRO.

Petitioner argues in addition that § 156.1 is an "abrupt departure from well-established practice," implying that this renders the regulation invalid even if ORM would otherwise have had authority to adopt it. Petitioner emphasizes that under ORM's previous regulations, review by an ALJ of her claim would have been available. As she correctly notes, 7 DCMR § 121.18 (2012) provided that the PSWCP Notice of Determination on a request for a schedule award "shall inform the employee or claimant of his or her right to appeal the decision by requesting a hearing before the [DOES Office of Hearing and Adjudication] within thirty (30) days of the date of the Program's decision." However, in adopting amended rules, including § 156.1, in 2017, ORM provided an explanation for the change. It explained in its notice of final rulemaking that it believed that its previous regulations "conflict[ed] with the controlling statutes," 64 D.C. Reg. at 632 –

---

[8] *See Darden v. District of Columbia Dep't of Emp't Servs.*, 911 A.2d 410, 414 (D.C. 2006) (The CRB "has the responsibility to provide administrative review of compensation orders that formerly was vested in the Office of the DOES Director."). Through the CRB, DOES "still has jurisdiction with respect to the adjudication of [public sector] disability compensation appeals." 53 D.C. Reg. 940, 940 (Feb. 10, 2006).

which, as the District puts it, are "silent about any appeal rights for the denial of a schedule award."

We have recognized that an agency "is not precluded from changing its interpretation [of a statute] if it believes that a different interpretation is more consistent with the statutory language and legislative intent" and if it "provide[s] an explanation of the change." *Hensley v. District of Columbia Dep't of Emp't Servs.*, 49 A.3d 1195, 1204–05 (D.C. 2012); *see also id.* at 1205 n.9; *Hanson v. District of Columbia Rental Hous. Comm'n*, 584 A.2d 592, 595 (D.C. 1991) ("[I]f an agency's regulation is invalid – i.e., [is] in conflict with the statutes, [is] beyond the statutory authority of an agency, or violates jurisdictional doctrines [–] the agency is not bound by its regulations and its decision to depart from the regulations will be upheld."). In addition, while our review of legal rulings is de novo, we accord deference to an agency's reasonable interpretation of the statute it administers. *Kelly v. District of Columbia Dep't of Emp't Servs.*, 214 A.3d 996, 1000 (D.C. 2019). In light of these principles, we defer to ORM's reasonable interpretation that providing for CRO review of denials of requests for schedule

awards is more consistent with the Council's intent as reflected in the Act than was the prior regulation that provided for appeals to an ALJ.[9]

## B. Retroactivity

Petitioner further argues that even if ORM's adoption of § 156.1 was a permissible change, the factors that determine whether retroactive application of a new regulation is permissible dictate that the change should not be applied retroactively. We conclude that no true retroactive application is involved here.

By way of factual background: The rule providing for an appeal only to the CRO was not in effect when petitioner made her request for a schedule award in 2014 (or 2015). ORM's amended rules first went into effect as emergency rules that were effective from November 30, 2016, through March 17, 2017. *See* 64 D.C. Reg. 3959, 4077 (Apr. 28, 2017). The amended rules were extended through a second emergency rulemaking that was effective from March 17, 2017, until July 7, 2017. *See* 64 D.C. Reg. 6213, 6325 (July 7, 2017). The final amended rules

---

[9] It is not clear, though, whether ORM believes that its former regulation "exceeded the agency's authority under the [Act]," District Brief at 22 n.8, or instead that ORM has (and could exercise if it wished) authority to "expand[] . . . the range of matters that receive hearings at DOES or OAH," District Supplemental Reply Br. at 5 n.5.

(including 156.1), which are substantively the same as the emergency rules, went into effect July 7, 2017. Thus, the rule now set forth in § 156.1 had been in effect for several months as an emergency rule when ORM issued the Notice of Determination in petitioner's case on May 2, 2017. Further, § 156.1 had been published as a final rule by the time OAH and the CRB made their rulings. As noted above, in 7 DCMR § 101.4, ORM clearly indicated its intent to apply § 156.1 to pending cases.

Application of a new rule to a pending case has retroactive effect if it "would impair rights a party possessed when [s]he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Holzsager v. District of Columbia Alcoholic Beverage Control Bd.*, 979 A.2d 52, 57 (D.C. 2009) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)). "[W]ith respect to the impact of [a] new law on the rights of parties, the fact that the new law merely alters the procedure by which a petitioner may obtain its objectives weighs in favor of applying the new law, unless [a party has] reasonably and significantly altered [her] circumstances in reliance on the prior law." *Id.* at 58 (internal quotation marks and brackets omitted); *see also Landgraf*, 511 U.S. at 275 ("Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the

conduct giving rise to the suit does not make application of the rule at trial retroactive."); *Bell v. New Jersey*, 461 U.S. 773, 777 n.3 (1983) (noting that because "a change of forum 'takes away no substantive right' [it] can apply retroactively"). Although "[t]he general rule is that [the adjudicator] must apply the law in effect at the time it renders its decision,"[10] the principles articulated in *Landgraf* dictate that "the law in effect at the time a decision is rendered shall not be applied where 'doing so would result in manifest injustice[.]'" *Holzsager*, 979 A.2d at 57 (quoting *Scholtz P'ship v. District of Columbia Rental Accommodations Comm'n*, 427 A.2d 905, 914 (D.C. 1981)).

Under the foregoing principles, § 156.1 was not given truly retroactive effect in appellant's case. One point is that if the prior regulation (authorizing an appeal to OAH from a schedule-award decision) conflicted with the statute as ORM has reasoned, petitioner simply did not have a previous right to an OAH hearing, the repealed regulation notwithstanding. ORM addressed this in its notice of final rulemaking, explaining that giving effect to rulemaking that "correct[s] or amend[s] a prior rule or agency decision that conflicts with the controlling statutes

---

[10] We applied that general rule in *Webb*, 204 A.3d at 850 (rejecting, as "without merit," the argument that an ORM rule regarding attorney-fee awards was "improperly applied retroactively" where the rule was adopted as a part of emergency and final rules that went into in effect before the resolution of the appeal of attorneys-fee awards).

does not constitute a retroactive application of these rules[,]" 64 D.C. Reg. at 6327, and that "there can be no retroactive application because the 'new' legal consequences under the final rules are derived from a correct application of existing statutes that were previously misapplied[,]" *id.* We agree.

Further, and in any event, § 156.1 "merely alter[ed] the procedure" by which petitioner could obtain her objective of receiving a schedule award, by requiring her to take her appeal to the CRO, and nothing in the record suggests that petitioner altered her circumstances in reliance on the repealed rule. Section 156.1 was the rule in effect at the time the CRB and OAH ruled, and they properly applied it in the absence of manifest injustice.

## C. Equal protection

Petitioner argues that § 156.1 treats her differently by comparison to "every permanently injured worker in the private sector," "every permanently injured public sector worker who received a Notice of Determination from ORM before December 1, 2016," and "every permanently injured public sector worker who has received 448 weeks of temporary total or temporary partial disability benefits." **[Petitioner's Br. at 7]** Petitioner acknowledges that a rational-basis standard of

review applies to this claim. *See Tucker v. United States*, 708 A.2d 645, 647 (D.C. 1998) ("Where a statutory classification is alleged to contravene equal protection principles, and where . . . the statute does not implicate a fundamental right or a suspect class, we must assess its validity pursuant to a rational basis standard.") (internal quotation marks and footnote omitted). Petitioner argues, however, that there is no rational basis for relegating her claim to an on-the-record review while affording evidentiary hearings before a neutral factfinder to the above-described claimants, thus treating her claim differently from theirs.

Under the rational-basis standard, a law "is constitutionally valid so long as the challenged classification is rationally related to a legitimate governmental purpose." *Id.* "A statutory classification will not be set aside if any set of facts reasonably may be conceived to justify it." *Id.* (internal quotation marks omitted). "The party challenging the constitutionality of such a classification must make a clear showing of arbitrariness and irrationality, and must negat[e] every conceivable basis which might support it." *Id.* (internal quotation marks and citation omitted) (bracket in original). Where no suspect classification is involved, the government is "entitled to 'a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality[,]'" *Hessey v. Burden*, 615 A.2d 562, 575 (D.C. 1992), a presumption that "extends to

administrative regulatory action as well[.]" *Steffan v. Perry*, 41 F.3d 677, 685 (D.C. Cir. 1994). Moreover, "a legislature or govern[ment] decisionmaker [need not] actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992).

We have little trouble conceiving of a rational basis for permitting some injured public sector workers to appeal adverse disability determinations to an ALJ while limiting others to a review by an agency review officer. For example, claimants who have been receiving TTD benefits for at least 448 weeks, *see* D.C. Code § 1-623.06a(a), are likely to be seriously disabled and to have become dependent on those benefits, and may suffer extreme deprivation if their TTD benefits terminate at 500 weeks without replacement by permanent disability benefits. A similar dependency may exist for claimants facing a Program proposal to reduce or terminate benefits. D.C. Code § 1-623.24(d). By contrast, as petitioner's case demonstrates, claimants seeking PPD schedule awards may have returned to work and may have been functioning without benefits for long periods of time — years (2009 to 2017) in petitioner's case — by the time they seek review of an ORM decision denying a schedule award.

Further, claimants seeking review of Program decisions denying them initial awards of benefits may need to provide evidence about matters such as what happened on the job to cause or aggravate an injury and about their ability to work, which typically takes the form of hearing testimony that properly will be the subject of credibility determinations. By contrast, claimants seeking PPD schedule awards rely on a more limited range of evidence and, most importantly, on written medical reports and disability ratings by doctors, and the decision-makers recognize a "conclusively presumed" "effect on earning capacity." *WMATA v. District of Columbia Dep't of Emp't Servs.*, 965 A.2d 1, 3 (D.C. 2009) (quoting 2 A. Larson, WORKMEN'S COMPENSATION LAW, § 58.11, at 10-323 to 10-324 (1987)); *cf. Mathews v. Eldridge*, 424 U.S. 319, 344, 345 (1976) ("The potential value of an evidentiary hearing" is less where the decision will turn on "routine, standard, and unbiased medical reports by physician specialists" who can communicate effectively, and where, even though "there may be 'professional disagreement with the medical conclusions,' the 'specter of questionable credibility and veracity is not present.'"). Thus, it can reasonably be thought that a claimant's testimony about her ability to work is much less important if important at all (although appellant appears to be correct that evidentiary hearings on denial of schedule awards are available in the private sector).[11] As to petitioner's

---

[11] *See Smith v. District of Columbia Dep't of Emp't Servs.*, 548 A.2d 95,

(continued…)

complaint about treatment that is different from that afforded to "every permanently injured worker in the private sector," ORM described in its rulemaking notice the lengthy, 266-day average time for decisions to issue after a DOES hearing (i.e., a hearing before a DOES AHD ALJ, which remains available to private sector claimants seeking schedule awards, *see, e.g.*, *Miller v. Commercial Moving & Rigging, Inc.*, 2018 DC Wrk. Comp. LEXIS 288 (Aug. 23, 2018)). ORM contrasted that to the "streamline[d,]""expedite[d,]" and "swift [and] efficient" CRO review process established by § 156.1 for PSWCP claimants seeking review of decisions for which the Act does not mandate a hearing before an ALJ. 64 D.C. Reg. at 6331 (noting that DOES had only "one dedicated ALJ" to hear appeals of Program matters). In light of that stated rationale for the change in process, we cannot that § 156.1 is without a rational basis such that its implementation amounts to an equal protection violation.

Petitioner asserts that review by the CRO is "at best . . . an 'on the record' determination," **[Petitioner's Br. at 9]** but nothing in ORM regulations describes

---

(…continued)
101 (D.C. 1988) (observing, in the private-sector context, that "schedule benefits for [PPD] are payable regardless of actual wage loss"; also remarking, over-optimistically it would appear, that the schedule is "limited to obvious and easily-provable losses of members," and that the "conspicuousness of the loss guarantee[s] that awards could be made with no controversy whatsoever").

the parameters of the CRO review or precludes, for example, the CRO's consideration of additional medical opinions beyond those that ORM considered before issuing its Notice of Determination. The CRB has observed (albeit prior to issuance of § 156.1) that "[t]here are no 'proceedings' before ORM, nor is a 'record' created." *Downing v. District of Columbia Pub. Sch.*, 2012 D.C. Wrk. Comp. LEXIS 522 (Nov. 28, 2012). Further, the form ("Form 9-A Appeal to the Chief Risk Officer") that ORM's Notice of Determination advised should be used to Appeal to the CRO (available at DC.gov/orm/attachments, last visited March 29, 2020), directs the claimant to submit "necessary attachments" and "supporting documentation" and to "[l]ist detailed facts supporting the reason(s) why the [ORM] decision is incorrect[,]" without suggesting that the submission is limited to material that ORM considered. Petitioner, it seems, "does no more than speculate as to the significance of the procedural differences in the review processes[.]" *Joyner v. District of Columbia Dep't of Emp't Servs.*, 502 A.2d 1027, 1032 n.6 (D.C. 1986).

For all these reasons, we reject petitioner's equal protection argument.

**D. Due process**

Petitioner also contends that the new regulation, § 156.1, "unfairly deprived [her] of her day in court" and therefore violates due process. She argues that under the tests set out in *Mathews v. Eldridge*, she was entitled to an evidentiary hearing on her claim.

"In order to invoke the Fifth Amendment's procedural due process protections, [a party] must show that a protected liberty or property interest is implicated." (*J. David*) *Leonard v. District of Columbia*, 794 A.2d 618, 623 (D.C. 2002). Assuming without deciding that petitioner has such a protected interest in receipt of permanent disability schedule award, we resolve petitioner's claim on the basis of the principle that "[d]ue process is a flexible concept[.]" *Kelly v. Parents United*, 641 A.2d 159, 167 (D.C. 1994) (internal quotation marks omitted). What it requires is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotation marks omitted). What due process requires in an administrative decision-making process depends on factors such as "the degree of potential deprivation that may be caused by a particular decision," *id.* at 341, the risk of erroneous deprivation, and the fiscal and administrative burdens that additional or substitute procedural requirements would entail, *id*. at 335. "[A]n evidentiary hearing is neither a

required, nor even the most effective, method of decisionmaking in all circumstances." *Id.* at 348.

The same facts discussed in the equal protection section above persuade us that petitioner has not shown a due process violation. There is no evidence that the denial of PPD benefits that petitioner has done without for many years, and which she first sought years after her treating orthopedic surgeon assigned her a 20% disability rating in 2011, worked a grievous deprivation, and similarly no persuasive evidence that the denial of benefits was erroneous.[12] Moreover, having forgone a review by the CRO and a further review by the Superior Court of any adverse CRO decision, petitioner cannot even show that the process that § 156.1 made available to her was inadequate to avoid the assertedly erroneous ORM determination. In particular, petitioner has not shown that a substitute procedural mechanism was needed to afford her an meaningful opportunity to be heard on the issue of whether she has a permanent impairment qualifying for a schedule award – an issue that is a predominately medical one, and one as to which evidence can be

---

[12] It is undisputed that two orthopedic surgeons who examined petitioner in 2015 and 2017 found that she has a 0% impairment, that one of the surgeons reported that petitioner exhibited "symptom magnification," and that petitioner relies on a 2011 opinion for her claim of permanent impairment.

meaningfully presented through written submissions by the doctors who have examined petitioner and reviewed her medical records.

### E. Estoppel

Finally, petitioner argues that because ORM unjustifiably delayed the processing of her claim for permanent disability benefits, her claim should be resolved under the former rules and ORM should be estopped from applying the new rule. "To assert estoppel successfully in [a] governmental context," a party must show that she "suffered injury due to reasonable reliance" and that the relief she seeks is necessary to "prevent injustice and promote the public interest." (*Marvin*) *Leonard v. District of Columbia*, 801 A.2d 82, 86 (D.C. 2002). "Estoppel generally requires that government agents engage . . . in conduct that can be characterized as misrepresentation or concealment, or, at least, behave in ways that have caused or will cause an egregiously unfair result." *Jackson v. District of Columbia Emps. Comp. Appeals Bd.*, 537 A.2d 576, 579 (D.C. 1988) (brackets and internal quotation marks omitted).

Although petitioner has shown delay (from 2014 or 2015, to 2017) in resolving her claim, she has not shown or even alleged misrepresentation or

concealment. On this record, she also has not shown that affording her an evidentiary hearing before OAH is necessary to promote the public interest or to prevent injustice or an egregiously unfair result. *See supra* n.14. Nor, having forgone a review by the CRO, has she shown that she suffered the injury she complains of (denial of a schedule award) because of the change in ORM's regulations. In addition, petitioner could not have "relied on the former rule" because there was no way of knowing whether petitioner would have needed to appeal ORM's determination at the time she filed her claim. And, having failed to show that ORM's interpretation that its prior regulation authorizing an OAH hearing conflicted with the statutory intent, petitioner also has not shown that her reliance on that prior regulation was reasonable. We therefore reject petitioner's estoppel argument.

Accordingly, the CRB order affirming the OAH dismissal of petitioner's appeal is

*Affirmed.*

MCLEESE, *Associate Judge*, dissenting: It is undisputed that Ms. Frazier suffered a work-related injury in 2008 while working for the District of Columbia

Public Schools; that she appropriately was awarded temporary total disability benefits for a time; and that after she was able to return to work in 2009, the temporary disability payments ceased. Approximately five years later, Ms. Frazier submitted a claim seeking permanent partial disability benefits relating to the original injury. Specifically, Ms. Frazier contended that the workplace injury ultimately caused her to permanently lose partial use of one of her legs, warranting an award of benefits pursuant to the compensation schedule in D.C. Code § 1-623.07(c)(2), (19) (2016 Repl.). The Office of Risk Management (ORM) denied Ms. Frazier's claim on the merits. Ms. Frazier sought review before the Office of Administrative Hearings (OAH), which dismissed for lack of jurisdiction. The Compensation Review Board (CRB) affirmed the dismissal of Ms. Frazier's case. The court affirms the ruling of the CRB. I would vacate the order of the CRB and remand for further proceedings. I therefore respectfully dissent.

## I.

In determining that it lacked jurisdiction to review the denial of Ms. Frazier's claim, OAH relied on 1 DCMR § 2950.3 (2017). That provision grants OAH authority to hear appeals from ORM in four specific kinds of cases: initial awards for or against compensation, certain decisions involving disputes about the

appropriateness of medical care or service, modifications of benefits, and certain requests to convert ongoing temporary disability benefits into permanent disability benefits. *Id.* Concluding that Ms. Frazier's claim did not fall into any of those categories, OAH determined that Ms. Frazier was required instead to seek review before the Chief Risk Officer of ORM, pursuant to 7 DCMR § 156.1 (2017) (public-sector workers' compensation claims not reviewable by OAH are reviewable by ORM's Chief Risk Officer). The CRB agreed with that analysis.

Fully assessing the jurisdictional issue presented in this case would require fighting through a complicated thicket of statutory provisions, regulations, and case law. *E.g.*, D.C. Code §§ 1-623.02a (2016) (granting Mayor authority to administer public-sector workers' compensation program (PSWCP), permitting delegation of that authority, except as to "disability compensation hearings and adjudication powers, pursuant to [D.C. Code] § 1-623.28, which shall be exercised by the Director of the Department of Employment Services [DOES]"), 1-623.22 (2016) (setting time limits for bringing "original claim[s]" and for reopening claims), 1-623.24 (2016) (establishing procedures for determining PSWCP claims); 1-623.24(d) (providing for modification of awards in certain circumstances), 1-623.28 (2016) (providing for review by DOES of "awards for or against payment of compensation" pursuant to D.C. Code § 1-623.24), 1-623.44

(2016) (authorizing Mayor to promulgate rules to administer and enforce PSWCP, including rules governing modification of awards); 1 DCMR § 2950.3 (2017) (OAH jurisdiction); 7 DCMR §§ 115.11 (2020) (supplemental claims), 115.12 (claimed aggravation of injury), 115.13 (latent disability), 115.14 (recurrence of disability), 140 (2020) (permanent disability), 144 (2020) (modification of awards), 155 (2020) (OAH jurisdiction), 156 (2020) (ORM jurisdiction); *Sheppard v. District of Columbia Dep't of Emp't Servs.*, 993 A.2d 525, 527-28 (D.C. 2010) (per curiam) (deferring to CRB's conclusion that particular provision of D.C. Code § 1-623.24 did not apply to claim for partial permanent disability based on injury as to which claimant had previously been awarded temporary total disability benefits); *Darden v. District of Columbia Dep't of Emp't Servs.*, 911 A.2d 410, 414 (D.C. 2006) (The CRB "has the responsibility to provide administrative review of compensation orders that formerly was vested in the Office of the DOES Director.").

In trying to chart a path through this thicket, the natural first step would be to figure out what statutory provision (if any) authorized ORM to decide the merits of Ms. Frazier's claim for permanent partial disability benefits. Surprisingly, ORM, OAH, the CRB, and the opinion for the court all skip that step. ORM decided the claim on the merits without explaining what provision authorized it to

do so.  OAH and the CRB concluded that certain provisions were not applicable to Ms. Frazier's claim, but expressed no view as to what provision, if any, authorized ORM to decide the claim on the merits.  This court takes the same approach.

The District of Columbia Department of Public Schools (DCPS) takes the position that claims such as Ms. Frazier's are properly understood as requests to reopen the initial temporary disability award, and thus are governed by D.C. Code § 1-623.22(e), which permits reopening within one year of the last disability payment or the final court order.  On that view, Ms. Frazier's claim ought to have been denied as untimely, because her claim for permanent partial disability benefits was brought several years after the last payment of temporary benefits, and the initial award was apparently not the subject of judicial review.  As previously noted, however, ORM did not deny Ms. Frazier's claim as untimely, instead deciding the claim on the merits.  Moreover, as the court's opinion notes, ORM appears to take the view that claims for permanent partial disability under the compensation schedule are not subject to the one-year statutory limit in D.C. Code § 1-623.22(e).  *Supra* at 3 n.1 (citing 64 D.C. Reg. 6325, 6333 (July 7, 2017) (in rulemaking notice, ORM states that claimants may make claim for schedule permanent disability award "at any time"); 7 DCMR § 140.2(a) (in absence of

good cause for delay, claim for permanent disability benefits must be filed within 180 days after termination of temporary benefits)).

In my view, it is not possible to reach a reasoned conclusion in this case without addressing the question whether permanent partial disability claims such as Ms. Frazier's, if factually supported and promptly presented, are cognizable under the applicable statutes and regulations. Imagine a public-sector employee who suffers a workplace injury resulting in a temporary disability that subsides, so that the employee returns to work and temporary disability payments end. If the injury flares up several years later, to the point that it becomes permanently disabling, there is a substantial argument from general principles that compensation for the permanent disability should be available, assuming that the employee sought such compensation promptly after the flare-up. The CRB has taken that view in the private-sector setting. *See Capitol Hill Hosp. v. District of Columbia Dep't of Emp't Servs.*, 726 A.2d 682, 686 (D.C. 1999) (deferring to CRB's conclusion that claimant can bring claim for permanent partial disability award under compensation schedule despite having previously obtained temporary benefits; court states that it would "make[] no sense" to interpret statutory time limits to make claimant ineligible to obtain permanent disability benefits before claimant became eligible for them). I realize that the private-sector workers'

compensation provisions vary in some respects from the public-sector provisions, so that a holding from one context does not necessarily carry over to the other. We have held, though, that the public-sector workers' compensation statute should be read broadly to advance its humanitarian purposes. *See generally Brown-Carson v. District of Columbia Dep't of Emp't Servs.*, 159 A.3d 303, 307 (D.C. 2017) (private-sector statute and public-sector statute have "similar humanitarian purpose," so court interprets provisions to be consistent even where statutory language is not identical); *cf. Newell-Brinkley v. Walton*, 84 A.3d 53, 56-57 (D.C. 2014) (workers' compensation provisions, including provisions applicable to District of Columbia police officers and firefighters, are typically given "liberal construction by the courts to effectuate [their] humanitarian purposes").

It is possible that DCPS is correct, and the best reading of the applicable statutes and regulations is that District of Columbia employees are simply out of luck if they suffer a workplace injury and receive temporary disability benefits, they then improve so that those temporary benefits end, and several years later their injury worsens into a permanent partial disability. Critically, however, ORM and the CRB have not indicated whether they agree or disagree with DCPS on this point. For that reason, the court has no idea whether upholding the CRB's ruling in this case will have the logical consequence of barring recovery by claimants

with otherwise seemingly meritorious permanent partial disability claims.  I would remand for the CRB (and perhaps ORM) to address that issue in the first instance. *See generally, e.g.*, *Fred F. Blanken & Co. v. District of Columbia Dep't of Emp't Servs.*, 825 A.2d 894, 901 (D.C. 2003) (remanding for Director of DOES to address "important" issue in first instance).

Because I believe that we need to hear further from the pertinent agency (or agencies), I express no firm view about the ultimate resolution of the jurisdictional issue in the case.  I do note, however, that if there were no other statutory basis for presenting permanent partial disability claims based on injuries that flare up several years after temporary disability benefits end, I would be very reluctant to rule out D.C. Code § 1-623.24(a) and (b).  By their terms, those provisions seem potentially applicable to such claims.  *See* D.C. Code § 1-623.24(a) (directing Mayor or Mayor's designee to decide "claims" seeking award of compensation) and (b) (providing for review of claims brought under D.C. Code § 1-623.24(a)).  Moreover, if permanent partial disability claims such as Ms. Frazier's arise under D.C. Code § 1-623.24 (a) and (b), then OAH (rather than the Chief Risk Officer of ORM) would seemingly have statutory authority to review ORM's decision of such claims, pursuant to D.C. Code §§ 1-623.28(a) (providing for DOES review of "award[s] for or against compensation" pursuant to D.C. Code § 1-623.24(a) and

(b)), 2-1831.03(b)(1) (2016) (granting OAH authority to decide certain matters previously under authority of DOES, including public-sector workers' compensation cases).

I recognize that there is language in *Sheppard*, 993 A.2d at 528, suggesting that D.C. Code § 1-623.24 is limited to "initial claims." *Sheppard*, however, focused on a particular statutory requirement: that the Mayor make an initial ruling within thirty days or the claim would be deemed accepted. 993 A.2d at 526 (citing D.C. Code § 1-623.24(a-3)(1)). Moreover, the court in *Sheppard* emphasized that "the fact that [the claimant's] claim is not 'deemed accepted' does not preclude recovery on her underlying claim for permanent partial disability benefits." *Id.* at 528 n.1. To the contrary, the court explained, the District of Columbia had advised the court that such claims receive the benefit of "a full-scale hearing" and related appeals. *Id.* In light of these assurances in *Sheppard*, I think we would need to hear a far clearer explanation from the pertinent agency (or agencies) before extending *Sheppard* so as to possibly foreclose permanent partial disability claims of the type at issue in *Sheppard* and this case.

**II.**

Because I would remand for further proceedings, I view it as premature to decide the other issues addressed in the court's opinion. I do wish to briefly discuss one topic touched on by the court: the applicable standard of review.

The court states in passing that it is deferring to the view of ORM. *Supra* at 15. Assuming for the moment that we would generally owe deference to ORM and/or the CRB, neither agency has expressed a clear position on what I view as a critical question: what is the proper statutory basis for permanent partial disability claims such as that brought by Ms. Frazier? *Cf., e.g.*, *D.C. Appleseed Ctr. for Law & Justice, Inc. v. District of Columbia Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1216 (D.C. 2012) ("Explanation in sufficient detail also is required for meaningful judicial review and for there to be a basis for judicial deference to agency determinations.") (internal quotation marks omitted).

More generally, it appears to me to be unsettled under District of Columbia law which agency, if any, would be entitled to deference in deciding whether the Chief Risk Officer of ORM or OAH has jurisdiction to review ORM's initial decision of permanent partial disability claims such as Ms. Frazier's. On the latter point, I note that (1) this court does not appear to have ever previously accorded deference to ORM, instead stating that deference is owed to the CRB, *e.g.*,

*Sheppard*, 993 A.2d at 527 ("Because of the CRB's special expertise in administering the [Comprehensive Merit Personnel Act, which includes the provisions governing the PSWCP], we defer to [the CRB's] reasonable interpretations of ambiguous provisions in that legislation.") (internal quotation marks omitted); (2) on the other hand, under the federal workers' compensation system, the Supreme Court has indicated that special deference was not owed to the analogue of the CRB, *see Potomac Elec. Power Co. v. Dir., Office of Worker's Comp. Programs*, 449 U.S. 268, 278 n.18 (1980) ("It should also be noted that the Benefits Review Board is not a policymaking agency; its interpretation of the [federal workers' compensation statute] thus is not entitled to any special deference from the courts."); and (3) additional complications arise where, as in this case, the statutory provisions at issue touch on the respective authority of multiple agencies, *cf., e.g.*, *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019) ("[T]he basis for deference ebbs when the subject matter of the dispute . . . falls within the scope of another agency's authority.") (brackets and internal quotation marks omitted); *Caiola v. Carroll*, 851 F.2d 395, 399 (D.C. Cir. 1988) ("The diffusion of the interpretive authority among several agencies, and the possibility of inconsistent interpretations, weaken the case for deference.").

I see no need to belabor the issue of deference, because in my view the court should remand to the CRB. Because the court instead affirms, I respectfully dissent.